FILED
01 MAR 30 PM 1:13
DISTRICT COURT
N.D. OF ALABAMA

# United States District Court
# Northern District of Alabama
# Western Division

| | | |
|---|---|---|
| Sheila Hardy, | ] | |
| Plaintiff(s), | ] | |
| vs. | ] | CV-99-N-2607-W |
| AutoZone, Inc., | ] | |
| Defendant(s). | ] | |

**ENTERED**
MAR 30 2001

## Memorandum of Opinion

### I. Introduction

The plaintiff, Sheila Hardy ("Hardy"), alleges that her former employer, defendant AutoZone, Inc. ("AutoZone"), violated the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), by terminating her employment due to her pregnancy. This matter is presently before the court on AutoZone's motion for summary judgment, filed on January 31, 2001 (Doc. # 21). After careful consideration of the arguments of counsel, relevant law, and the record as a whole, the court finds that the motion for summary judgment is due to be **GRANTED** in all respects.

## II. Statement of Facts[1]

The facts, as garnered from the affidavits and deposition testimony submitted by the parties but viewed in a light most favorable to the plaintiff, are as follows:

Ms. Hardy accepted employment as a part-time customer service representative with AutoZone, a retail automotive parts store, on or about April 23, 1998. (Def. Ex. E, at Ex. 1). Prior to gaining employment with AutoZone, Hardy held numerous jobs in the retail and service industry, and had approximately ten years experience as a cashier. (Def. Ex. A., Hardy Depo., p. 53). As a new cashier, Hardy participated in AutoZone's new employee orientation and received and read AutoZone's employee handbook. (*Id.* at pp. 108, 110). Therefore, Hardy understood that it was her responsibility, as well as the responsibility of all AutoZone employees, to ensure that all merchandise is properly "rung up" so as to prevent merchandise from leaving the store without payment, whether intentionally or not. (*Id.* at p. 133). Hardy also understood that, like her previous places of employment, her failure to ring up merchandise could result in termination of her employment. (*Id.* at pp. 56-57).

According to AutoZone, despite her experience and awareness of corporate policy, Hardy mistakenly allowed, on three separate occasions, automotive parts (a shock absorber, brake rotor, and an alternator) to leave the store without the defendant receiving payment for those parts. (*Id.* at p. 157; Def. Ex. F, at Ex. 2). AutoZone also maintains that

---

[1] In developing the statement of facts in this opinion, the court considered the facts proposed by the parties and the court's own examination of the evidentiary record. These are the "facts" for purposes of this opinion only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied*, *USX Corp. v. Cox*, 114 S. Ct. 900 (1995).

2

Hardy improperly charged a $20.00 shipping and handling fee in connection with the sale of an express part. (Def. Ex. B, Williams Depo., at pp. 28-29). These improper transactions allegedly generated customer complaints which Tom Berkey ("Berkey"), the store manager, brought to the attention of Joe Williams ("Williams"), AutoZone's "area advisor" who, in turn, contacted Lawrence Swindall ("Swindall"), AutoZone's "loss prevention advisor." (Def. Ex. G, at Ex. 3).

During the course of his loss prevention investigation, Swindall took a written statement from Hardy wherein she acknowledged that she had mistakenly charged one customer for three shock absorbers instead of four, and inadvertently charged another customer for one brake rotor instead of two, both in violation of corporate policy. (*Id.*; Def. Ex. A, Hardy Depo., at pp. 171-72). Hardy denied responsibility for permitting an alternator to leave the store without payment and denied charging a shipping and handling fee in connection with the sale of an express part. (Def. Ex. F, at Ex. 2). Swindall forwarded Hardy's statement, along with a recommendation of termination to Mike Stebbins ("Stebbins"), the company's district manager. (Def. Ex. G, at Ex. 3; Def. Ex. 5, Stebbins Aff.). According to Stebbins, after reviewing the information and speaking with a specialist in AutoZone's human resources department, he made the decision to terminate Hardy's employment. (*Id.*).

Each AutoZone store is given an established number of employee work hours per week, a figure set by the corporate office based on sales. (Def. Ex. B, Williams Depo., at pp. 17-23). The work hours allotted to a particular store are first assigned to full time employees, with the remaining hours given to part time employees. (*Id.* at pp. 19-23).

3

Therefore, as a part time employee, Hardy was not guaranteed a fixed number of hours per week. (Def. Ex. A, Hardy Depo., p. 106). However, when her "base store" was short of hours, Berkey, the store manager, would oftentimes send Hardy to another location to work. (*Id.* at p. 108; Def. Ex. B, Williams Depo., at p. 76). Hardy viewed this as a "nice gesture" on Berkey's part. (Def. Ex. A, Hardy Depo., at pp. 137-140).

Roughly two months prior to AutoZone's decision to terminate Hardy, Williams questioned Berkey as to why his store was "so far under hours." (Plf. Ex. 3, Williams Depo., at p. 13). In response, Berkey purportedly commented that he was having a "flexibility problem" because he had an employee who was expecting and had to be off to go to the doctor. (*Id.* at p. 11). Until shortly before her employment was terminated, Hardy was the only pregnant employee working at the AutoZone locations in question. (Plf. Ex. 5, Hardy Aff.). While Hardy was employed with AutoZone, the company accommodated all restrictions related to, and never made derogatory remarks about, her pregnancy. (Def. Ex. A., Hardy Depo., pp. 80, 122, 138). However, a former AutoZone employee maintains that, prior to Hardy's employment, Berkey made a derogatory comment about having to work with an expecting employee. (Plf. Ex. 6, Little Aff.).

AutoZone maintains a "corrective action" policy designed to give an employee an opportunity to correct problems that could jeopardize his or her job. (Plf. Ex. 3, Williams Depo., at Ex. 3). That policy provides, as a general rule, that the employee's manager "will give corrective action in this order: verbal warning, first written warning, and second written warning." (*Id.*). However, the policy further provides that "[c]orrective action may include termination and doesn't require all three steps." (*Id.*). Although the record suggests that

4

Berkey verbally warned Hardy about neglecting to "ring up" a brake rotor, there was apparently no form of "corrective action," short of an ultimate employment decision, with respect to the additional mistakes Hardy allegedly made in connection with the sale of AutoZone merchandise. (Plf. Ex. 3, Williams Depo., pp. 52-53, 67-68). Moreover, Berkey made no written record of any verbal warning to Hardy concerning such mistakes. (*Id.* at pp. 56-59).

Hardy filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 16, 1999, alleging that AutoZone's accusation of "improper cash register procedures" was a mere pretext to terminate her employment because she was pregnant. On June 30, 1999, the EEOC sent Hardy her Notice of Right to Sue. She commenced this action on September 28, 1999, seeking redress pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

### III.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a

6

reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 746 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.   Discussion

In 1978, Congress amended Title VII by enacting the Pregnancy Discrimination Act ("PDA"), which provides that the prohibition against sex-based employment discrimination in § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), applies with equal force to discrimination on the basis of "pregnancy, childbirth, or related medical conditions." *See* 42 U.S.C. § 2000e(k). The PDA further provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000(e)(k). Moreover, the analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits. *Armstrong v. Flowers Hosp.*, 33 F.3d 1308, 1312-13 (11th Cir. 1994); *Maddox v. Grandview Care Ctr.*, 780 F.2d 987, 989 (11th Cir. 1986).

If Hardy is to prevail on her claim of disparate treatment based upon her pregnancy, she must submit proof of her employer's discriminatory motive, that is, of some causal relationship between the termination of her employment and her pregnancy. *See Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998). In a Title VII case, such as this, where the plaintiff relies solely upon circumstantial evidence, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-254 & n. 6, 101 S. Ct. 1089, 1094 & n. 6, 67 L. Ed. 2d 207 & n. 6. "Demonstrating a *prima facie* case is not onerous, it requires only that

the plaintiff establish facts adequate to permit an inference of discrimination." *Lathem v. Department of Children & Youth Servs.*, 172 F.3d 786, 792 (11th Cir. 1999).

Once the plaintiff establishes a *prima facie* case, the burden of production then shifts to the employer to articulate a "legitimate nondiscriminatory reason" for the alleged discriminatory employment action. *Lathem*, 172 F.3d at 793. "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519, 1527-28 (11th Cir. 1997), *cert. denied*, __ U.S. __, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1997).

If the employer presents a legitimate nondiscriminatory reason for its action, the presumption of discrimination "drops from the case," *Burdine*, 450 U.S. at 255 n. 10, leaving the elements of the *prima facie* case. *Combs*, 106 F.3d at 1528. The plaintiff must then prove by a preponderance of the evidence that the reason offered by the employer was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. The plaintiff may meet this burden by persuading the fact-finder either directly that a discriminatory reason more than likely motivated the employer or indirectly that the employer's proffered explanation is unworthy of belief. *Combs*, 106 F.3d at 1528. If the plaintiff succeeds in meeting this burden, the disbelief of the defendant's proffered reasons, together with the *prima facie* case, is sufficient circumstantial evidence to support a factual finding of discrimination and preclude summary judgment. *Id.* at 1529.

### A. The *Prima Facie* Case

In order to make out a *prima facie* Title VII case of discrimination in the present context, the plaintiff must prove that: (1) she was a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse effect upon her employment; and (4) she suffered from differential application of work or disciplinary rules. *Armstrong*, 33 F.3d at 1314. AutoZone maintains that Hardy cannot establish a *prima facie* of disparate treatment because she has failed to offer any evidence tending to establish that AutoZone treated a similarly situated, non-pregnant employee more favorably than it did she.[2] "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). While Hardy alleges that other (unknown and unnamed) non-pregnant employees who "likely" contributed to her mistakes were neither investigated nor terminated, she has failed to point to a specific employee who allowed merchandise to leave the store without payment, inadvertently or otherwise, but was not terminated. Since Hardy has failed to establish a *prima facie* case, AutoZone's motion for summary judgment is due to be granted.

---

[2] AutoZone also contends that Hardy was not "qualified" for the position of cashier because, over the course of her five month employment, she made roughly four mistakes which permitted merchandise to leave the store without payment. For purposes of employment discrimination law, a person is "qualified" for a particular position if "[s]he meets the criteria that the employer has specified for the position." *Wright v. Southland Corp.*, 187 F.3d 1287, 1300 (11th Cir. 1999). Given that AutoZone has not provided the court with any particular specifications for the position of cashier, and given that Hardy has over ten years experience in such a position, the court is of the opinion that Hardy has presented sufficient evidence from which a jury could find that she was qualified for the position of AutoZone cashier.

10

**B.     Pretext**

Even assuming Hardy could establish a *prima facie* case, the court would nonetheless grant AutoZone's motion because Hardy has failed to produce sufficient evidence tending to suggest that AutoZone's legitimate, nondiscriminatory reason for terminating her employment is a pretext for discrimination.

Once the plaintiff has made out a *prima facie* case, the burden shifts to the defendant to articulate one or more "legitimate, non-discriminatory reasons for its employment action." *Holifield*, 115 F.3d at 1564. This burden is "exceedingly light," *Perryman v. Johnson Products Co.*, 698 F.2d 1138 (11th Cir. 1983), and the defendant "need only offer admissible evidence sufficient to raise a genuine issue of material fact as to whether it had a legitimate reason." *Hill v. Seaboard C. L. R. Co.*, 767 F.2d 771 (11th Cir. 1985).

According to AutoZone, Hardy's employment was terminated because she violated corporate policy by "employ[ing] improper cash register procedures" and/or failing "to properly account for the sale of [ ] merchandise." (Def. MSJ at p. 8). It is undisputed that, on at least two occasions, Hardy mistakenly allowed merchandise to leave the store without payment. (Def. Ex. F, at Ex. 2). It is also undisputed that AutoZone maintains a corporate policy providing that "serious violations," such as "[i]mproper cash register procedures or failure to properly account for the sale of merchandise," may result in termination. (Def. Ex. H, at Ex. 4). It is further undisputed that Hardy received and read AutoZone's corporate policy during her new employee orientation. (Def. Ex. A, Hardy Depo., at pp. 108, 110). Clearly, if believed, AutoZone's explanation would be a sufficient legitimate, nondiscriminatory reason for terminating Hardy's employment.

11

At this juncture, the burden shifts back to Hardy to demonstrate, by a preponderance of the evidence, that AutoZone's reason for terminating her employment was a mere pretext for pregnancy discrimination. *See McDonnell Douglas*, 411 U.S. at 804. In an effort to carry her burden, Hardy asserts that management and coworkers "appeared" irritated and were "no longer friendly and helpful" upon learning of her pregnancy. She argues that, while Berkey oftentimes advised her that he did not have any hours available for her at his store, when questioned by AutoZone's "area advisor" as to why his store was "so far under hours," Berkey suggested that the store was having a "flexibility problem" due to Hardy's visits to the doctor. She points out that, with the exception of her "mistake" in charging a customer for three instead of four shocks,[3] AutoZone has offered no affidavits, receipts or documentation tending to suggest her other mistakes even occurred. She questions whether some, if not all, of her mistakes are more appropriately attributed to actions or inactions of other employees. Moreover, even assuming she made "mistakes" resulting in unpaid merchandise, Hardy argues that Berkey should have taken "corrective action"[4] prior

---

[3] As to the receipts produced by AutoZone in connection with the sale of automobile shocks, Hardy argues that AutoZone violated its own rules by refunding the customer for four shocks when it is undisputed that, due to her mistake, he was only charged for three.

[4] AutoZone's handbook contains a provision that provides:

> Sometimes a manager may feel that an AutoZoner isn't meeting AutoZone's expectations. If this happens, your manager will take corrective action, which includes recommending ways for you to improve. Corrective action is designed to give you a chance to correct problems that could jeopardize your job. Generally, your manager will give corrective actions in this order:
>
> *   Verbal warning
> *   First written warning
> *   Second written warning

(Plf. Ex. 3, Williams Depo., at Ex. 3).

to terminating her employment. According to Hardy, she was never given a written warning for any of her alleged mistakes and, up until the date of her termination, her employment record was "spotless." Finally, Hardy argues that the employee records proffered by AutoZone as examples of similar treatment are "all employees who apparently were committing theft and other criminal acts involving their business."

Upon a thorough review of the evidence of record, the court is convinced that Hardy has failed to present evidence that would justify a fact-finder in finding that AutoZone's proffered reason is unworthy of credence, or that AutoZone was more likely motivated by a discriminatory reason in terminating Hardy's employment. As previously mentioned, Hardy committed, albeit mistakenly, a "serious violation" of corporate policy. Despite Hardy's contentions to the contrary, where an employee commits such a "serious violation," AutoZone's policy does not require "corrective action" prior to making a final employment decision. (Plf. Ex. 3, Williams Depo., at Ex. 3). While Hardy may be of the opinion that such a policy is too harsh or unforgiving, she cannot establish pretext "merely by questioning the wisdom of the employer's reason, at least not where . . . the reason is one that might motivate a reasonable employer." *Combs*, 106 F.3d at 1543. As the Eleventh Circuit has made clear:

> Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules. Title VII addresses discrimination. Title VII is not a shield against harsh treatment at the workplace. Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for good reason, bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.

13

*Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984); *see also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions").

The court also finds Hardy's argument that Berkey, her manager, harbored a discriminatory animus against her unpersuasive. As a part-time employee, Hardy was never guaranteed a certain number of work hours per week. (Def. Ex. A, Hardy Depo., p. 106). If her "base store" could not provide enough hours, she considered it a "nice" gesture when Berkey sent her to another location to work. (*Id*. at pp. 137-140). There is no evidence that Berkey, or any other employees for that matter, made any derogatory remarks regarding Hardy's pregnancy. Although, on one occasion, Berkey apparently blamed Hardy's doctor visits on his store's "flexibility problem," such a statement, standing alone, does not render AutoZone's explanation unworthy of belief. Moreover, even assuming Berkey harbored a discriminatory animus against Hardy, there is no evidence to suggest Berkey somehow influenced the decision to terminate Hardy short of informing his "area advisor" of Hardy's potential violations of corporate policy. *See Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir. 1999) (recognizing employer may be held liable for employment discrimination where the actions of a neutral decision maker are influenced by the prejudice of non-decision maker). AutoZone maintains, and the evidence suggests, that the results of the loss prevention investigation, including Hardy's admissions, were forwarded to Stebbins, the company's district manager. Stebbins reviewed the documentation, consulted with human resources, and decided to terminate Hardy's employment with

AutoZone. According to his affidavit testimony, at the time of his decision, Stebbins was not even aware of Hardy's pregnancy. (Def. Ex. 5, Stebbins Aff.).

The court has thoroughly considered Hardy's additional arguments in support of pretext, but finds those arguments equally unpersuasive. Accordingly, the court is convinced that no reasonable fact-finder could conclude that the explanation proffered by AutoZone was not the true reason why Hardy's employment was terminated. The motion for summary judgment will be **GRANTED**.

## V. Conclusion

The court will enter an appropriate order in conformity with this memorandum opinion granting AutoZone's motion for summary judgment.

Done, this 30th of March, 2001.

_____
Edwin Nelson
United States District Judge

15